[No. 1364.]

JOHN DUBOSE *v.* THE STATE.

1. MURDER—NEW TRIAL—VERDICT in a murder case, where the defendant is found guilty, must announce the degree in which he is found guilty. Failure to find such degree is cause for new trial.
2. PRACTICE—FORMER JEOPARDY.—A defendant is not exempt from a second trial for the same offense when he has been granted a new trial upon his own motion, or where his motion in arrest of judgment, or application to vacate a judgment for other cause, prevails.
3. SAME—CASE STATED.—A motion in arrest prevailed because the verdict of the jury failed to announce the degree of murder of which the defend-

ant was found guilty. Upon his subsequent trial, the defendant interposed a plea setting up that the proceedings in the former trial operated as an acquittal. Exceptions to this plea of former acquittal were sustained by the trial court, and the plea was stricken out. *Held*, that the action of the court was correct.

4. SAME—VERDICT.—The test as to the effect of an imperfect verdict, which has been received and recorded, is, if it sufficiently finds anything, whether for or against the defendant, it will be interpreted by the court, and judgment be rendered, on the one side or the other, for what is thus found; otherwise, it will be treated as null, the judgment will be arrested, or be erroneous if rendered, and the defendant may be tried anew. Hence, where a verdict is clearly insufficient, as in this case on its former trial, it was a nullity, and it became the duty of the court to arrest the judgment thereupon; and the rule is the same, whether this was to be done upon the court's own motion or that of the defendant.

5. SAME.—Where, in a murder trial, the verdict was insufficient, it could not operate as an acquittal of murder in the first degree.

6. SAME—CHARGE OF THE COURT—ACCOMPLICE TESTIMONY.—In the absence of evidence tending to show the complicity of a State's witness in the commission of the offense, it was not error to refuse a charge with reference to accomplice testimony.

7. SAME—CIRCUMSTANTIAL EVIDENCE.—A charge upon circumstantial evidence is not required in a case when the prosecution is not dependent upon that character of proof.

8. PRACTICE—EVIDENCE.—Indictments and records in other cases, wherein the defendant was accused of assault with intent to murder the deceased, and of the theft of the property of the deceased, were properly admitted as evidence of motive.

9. SAME—JUDICIAL DISCRETION.—It is properly within the discretion of the trial court to permit the state's counsel to speak to a witness who is under the rule, and such action of the court will not be revised, except where an abuse of such discretion is apparent.

APPEAL from the District Court of De Witt. Tried below before the Hon. H. C. Pleasants.

On page 230 of the tenth volume of these Reports will be found a report of the first trial and conviction of the appellant, and a *resume* of the evidence upon which that conviction was secured. Except that on the present trial there was no evidence adduced tending to inculpate the witness Bacquet as a party to the murder of James Benton, the same witnesses testified to substantially the same facts, with the further exception that Mrs. R. Riddle and H. Cresswell, whose testimony appears in the report of the former trial, did not testify on this trial. The additional testimony adduced by the State on this trial was that of Ida Harris, in chief, and Bacquet, recalled in rebuttal; and by the

defense, that of Joe Denson and B. Neuman, all of which is set out below. As on the former trial, the punishment awarded by a verdict of murder in the first degree was a life term in the penitentiary.

Miss Ida Harris testified, for the State, that she was the daughter of the defendant's wife, by a former husband. She was born in 1867, and was eight or nine years old at the time of the murder of Benton, at which time she lived with her mother near her grandmother's, Mrs. Edwards. Before the defendant was married to her mother (the witness could not remember the month or year), the defendant came to her mother's house, and appeared to have been weeping. He met the witness's mother on the gallery of the house, and told her that he had killed a man, and that the officers were after him, and that he had to leave the country. He then bade good-bye to the mother of the witness, and to her aunt Alice Edwards, who was present. When this confession was made by the defendant to her mother, the witness was standing in the door leading from the house to the gallery. She did not know whether this was in the year 1875, or in what year it occurred. Shortly afterwards, the mother of the witness and the defendant were married.

A short time after the marriage of the defendant and the mother of the witness, the witness heard the defendant say to her mother: "I have killed Benton, and I don't think he will trouble me any more." This confession to the wife was made by the defendant at night, after he and she had retired. The bed occupied by the defendant and the mother of the witness, and that occupied by the witness and her little sister, were separated at the time only by a partition in which there were large cracks. The witness could not tell the year in which this occurred, nor how long a time had then elapsed since the marriage of the defendant and her mother.

Upon her cross-examination, the witness testified that she had known these facts all the time, and that no one had talked to her on the subject. The first person to whom she made this statement was Irvin Elder, since the last trial of this cause. She had never disclosed her knowledge of these confessions to any of her relatives.

The witness was shown a letter purporting to have been written by her to the defendant about four months prior to this trial, while he was confined in jail. She acknowledged that she wrote it. Among other things this letter recited: "God will be avenged

against all who are working against you. He will cast them and their lies to the winds of this dreary earth!" The witness acknowledged that when she wrote this letter she was aware of the defendant's confession, and declared, in answer to a question, that she did not know why she wrote it. She declared that she loved her step-father, the defendant, as much now as ever, but was compelled to tell the truth.

Re-examined, the witness testified that she was now in attendance upon the court by compulsion, having been attached under process of the court.

Joe Denson testified, for the defense, that a year or two after the murder of Benton he met the witness Bacquet in Rancho, Gonzales county. In the course of a conversation about the killing of Benton, Bacquet told the witness that he did not believe that either Robert Riddle or the defendant had anything to do with the killing of Benton. He did not remember whether this statement of Bacquet was voluntary, or whether it was in reply to a question.

B. Neuman testified, for the defense, that in June, 1878, while himself, one Rice, and the State's witness Bacquet, were riding in company to the county seat to appear before the grand jury in response to a summons, and while conversing about the matter in regard to which they supposed they had been called to testify, Bacquet spoke of the murder of Benton and of his own previous appearance before the grand jury in regard to it. Bacquet then said in the presence of witness and Rice: "I don't think they can make a fellow tell on himself."

W. C. Bacquet, recalled by the State in rebuttal, testified that he did not at any time tell G. W. Crosson that he, the witness, was present and saw the killing of Benton, or that he heard the shooting, or that the defendant had threatened to kill him as testified by Crosson. He declared that he told Crosson that the defendant had confessed the murder to him, and related the matter to Crosson exactly as he related it on this trial. He denied that he had ever told Neuman, or any one else in Neuman's presence, that he "did not think the grand jury could make a fellow tell on himself." He had no recollection of having told Denson that he did not think Riddle and the defendant had anything to do with the murder of Benton, but if he did it was because he did not want it known that he knew anything about it, as he was afraid of the Duboses. If he ever made such a state-

ment to Denson, it was before he appeared before the grand jury, and it was told because he was afraid to tell the truth.

The motion for new trial raised the questions involved in the rulings of this court, and assailed the organization of the jury, and the evidence as contrary to the judgment. The motion in arrest of judgment alleged: 1, that the indictment was too vague, uncertain and indefinite to authorize a judgment; 2, that it charged no offense against the laws of the State of Texas.

*Lackey, Stayton & Kleberg,* for the appellant. On a former trial hereof, the following verdict was rendered:

"We, the jury, find the defendant John Dubose guilty as charged in the indictment, and assess his punishment at confinement in the penitentiary for life.

(Signed) "S. M. JOHNSON, Foreman."

Which verdict was approved by the court and judgment rendered in accordance. On the twenty-fourth day of December, 1881, the said judgment was set aside and the defendant granted a new trial. At the June term, 1882, of the District Court of De Witt county, the appellant was again arraigned under said indictment, when he filed his plea of former acquittal of murder in the first degree, under the verdict rendered in this cause at the December term, 1881, above quoted, which plea the court overruled; to which ruling the appellant excepted, and appellant in his assignment of errors assigns the same as error, as follows:

"2. The court erred in overruling the defendant's special plea filed June 21, 1882, of former acquittal of murder in the first degree."

First proposition under second assignment of error: The appellant having been arraigned and tried under an indictment charging him with murder in the first degree, and the jury having rendered a verdict which did not find him guilty of murder in the first degree, which verdict was approved by the court, he could not again be tried for murder in the first degree.

The third assignment of error is as follows: "The court erred in its instructions to the jury, and failed to charge the law and the whole law applicable to the case." The court should have charged the law applicable to the testimony of accomplices. We submit that there was evidence adduced upon the trial of this cause, which tended to show that the witness William C.

Bacquet was an accomplice in the commission of the crime with which appellant was charged.

Witness John Denson testified that Bacquet had told him that he did not believe that appellant had anything to do with the killing of James Benton.  The witness B. Neuman testified that Bacquet, on the day he was summoned before the grand jury to testify of the killing of James Benton, said that the grand jury could not make a fellow tell on himself.

From the testimony of G. W. Crosson it appears that it was through his information that the witness Bacquet was summoned before the grand jury; that Bacquet, when he first told him of the killing of James Benton, admitted that he was present at the killing, and near enough to see it and to hear the shooting, and that he gained his information about the killing upon having been present and from his own observation, and said nothing of the confession of appellant.  Furthermore it appears from all the testimony that Bacquet remained quiet for several years, not saying anything about the murder, until he was forced before the grand jury, and then he made a different statement from that made by Crosson, exculpating himself.

From Bacquet's own testimony it appears that on the morning after the killing he was near the scene of the murder, aiding the parties whom he knew to be guilty of foul murder in evading the law, and fearing to go to the coroner's inquest because he feared he might be accused of the murder.  Now we submit that the unreasonable manner in which Bacquet claims that the confession was made to him, an entire stranger, by appellant, who, according to this statement, was expecting every moment to be arrested by the officers of the law, to be arraigned before the man whom he had tried to kill, but whom he had just seen at the tin shop in Yorktown, and who would testify against him, thus clinching the testimony against himself, certainly casts suspicion on the truth of Bacquet's statement.  Could it be probable that Bacquet was present at the killing of Benton, at the dead of night, far away from his own camp, at a place where he had no business, unless he was watching to see the deed done or to assist in its commission?

The fifth, sixth, seventh and eighth assignments of error are, "That the court erred in refusing the charges asked by defendant," and they may be considered together under the following proposition:

Where there is evidence tending to show that a material wit-

ness for the State was an accomplice in the commission of the offense charged upon defendant, the court should charge the law applicable to the evidence of an accomplice. See statement under proposition under third assignment.

The twelfth assignment of error is as follows: "The court erred in permitting, over defendant's objections, counsel employed to assist in the prosecution of the cause to communicate with Ida Harris (a witness who had been placed under the rule) just before said witness was called to testify."

Proposition under twelfth assignment: Where the enforcement of the rule is requested by defendant, proper practice requires the consent of counsel to any relaxation of it, and in this case the defendant may have been injured by permitting it. (*Heath* v. *The State*, 7 Texas Ct. App., 464.)

*J. H. Burts*, Assistant Attorney General, for the State.

WHITE, P. J.    Since this case was reversed on the former appeal (*Dubose* v. *The State*, 10 Texas Ct. App., 230), appellant has been twice tried in the district court.    His first trial resulted in the following verdict rendered by the jury, viz: "We, the jury, find the defendant, John Dubose, guilty as charged in the indictment, and assess his punishment at confinement in the penitentiary for life."    Judgment was rendered on this verdict, but upon motion of defendant in arrest, it was set aside and a new trial awarded him.    Though not shown specifically by the record, doubtless the motion was sustained upon the ground that the verdict failed to find the degree of murder of which the jury ascertained defendant to be guilty, which fact is made essential by statute in verdicts of convictions for murder.    (Penal Code, Art. 607; *Buster* v. *The State*, 42 Texas, 315; *Brown* v. *The State*, 3 Texas Ct. App., 295; *Krebs* v. *The State*, 3 Texas Ct. App., 349; *Colbath* v. *The State*, 2 Texas Ct. App., 391; *Boothe* v. *The State*, 4 Texas Ct. App., 202; *Nettles* v. *The State*, 5 Texas Ct. App., 386.)

On the second trial, which ensued after the new trial above noticed was awarded, defendant set up the former trial and conviction and the new trial in a special plea, claiming that they operated as an acquittal.    This plea of former acquittal was excepted to by the district attorney, and on his motion was stricken out by the court.    It is urged on this present appeal that the

court erred in sustaining said exceptions, and in striking out said plea.

In *Simco* v. *The State*, 9 Texas Ct. App., 338, this court had occasion to discuss the nature, character and effect of the special pleas of former jeopardy, *autrefois* acquit and convict, and one of the rules laid down as established both by statute and decision was that a defendant is not exempt from a second trial for the same offense where a new trial has been granted on his motion; and that if he moves in arrest of judgment, or applies to the court to vacate a judgment already rendered, for any cause, and his motion prevails, he will be presumed to waive any objection to being put a second time in jeopardy, and so he may ordinarily be tried anew. (Code Crim. Proc., Art. 20; 1 Bish. Crim. Law, 4 ed., § 844.)

Mr. Bishop says "the test as to the effect of an imperfect verdict, which has been received and recorded, is, if it sufficiently finds anything, whether for or against the defendant, it will be interpreted by the court and judgment rendered, on the one side or the other, for what is thus found; otherwise, it will be treated as null, the judgment will be arrested, or be erroneous if rendered, and the defendant may be tried anew." (1 Bish. Crim. Proc, 3 ed., § 1005.)

Such being the law, and the verdict of the jury being clearly insufficient and void, because it failed to find the degree of murder of which the defendant was found guilty, it was most clearly the duty of the court to declare it a nullity, set it aside, and arrest the judgment to be rendered upon it; and under such circumstances, whether the new trial is awarded *ex mero motu* by the court or upon defendant's motion, the rule is the same; defendant may again be placed upon trial, and a plea of former jeopardy will not avail him. And, the verdict being a nullity, it could not possibly operate an acquittal of murder in the first degree. (See *Buster* v. *The State*, 42 Texas, 315.) It was not error, therefore, for the court to strike out defendant's special plea and hold him to a second trial, as was done.

There is a material difference in the evidence shown by the statement of facts now before us and that exhibited on the former appeal. From the evidence as now shown, there is nothing going to establish the fact that the State's witness Bacquet was an accomplice to the murder, and the court committed no material error in declining to charge the law with reference to accomplice testimony as applicable to the facts.

Nor was the case one dependent upon circumstantial evidence and demanding that the jury should be instructed upon that branch of evidence. Defendant's bills of exception, so far as they relate to the admissibility of the indictments and records in other cases, wherein defendant was charged with assault with intent to murder and theft of the property of the deceased (J. T. Benton), are wholly untenable. Such evidence was admissible to show motive on the part of defendant to murder Benton. As to the other exception, it was matter of discretion with the court to permit counsel for the State to speak to a witness who had been placed under the rule (*Jones* v. *The State*, 3 Texas Ct. App., 150; *McMillan* v. *The State*, 7 Texas Ct. App., 142), and unless abuse of the discretion is plainly made to appear, his action will not be revised.

It only remains for us to say that we have maturely considered the evidence. By defendant's own confessions, he is guilty of inhumanly assassinating a man in his sleep, in the dead hour of night, whose hospitality he had sought and was enjoying. Imprisonment for life, if his own confessions be true, is not an excessive punishment for his crime. His trial and conviction appear in every respect to be fair and just, and the judgment is in all things affirmed.

*Affirmed.*

Opinion delivered February 3, 1883.